**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**July 17, 2026 14:59**

By: JAMES GRENDELL 0088098

Confirmation Nbr. 3917531

| | |
|---|---|
| JONATHAN J. MARRELL, ET AL | CV 26 142897 |
| vs. | **Judge:** JOY KENNEDY |
| UNITED STATES DEPARTMENT OF HUD, ET AL | |

**Pages Filed:** 55

GOVERNMENT EXHIBIT
A

**IN THE COURT OF COMMON PLEAS**
**CUYAHOGA COUNTY, OHIO**

**JONATHAN J. MARELL and**
**EBBY F. MARELL**,
25816 Fairmount Boulevard
Beachwood, Ohio 44122

Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF**
**HOUSING AND URBAN DEVELOPMENT**
451 7th Street, S.W.
Washington, D.C. 20410

-and

**COMPU-LINK CORPORATION d/b/a CLNK**
**c/o United States Department of Housing**
**and Urban Development**
451 7th Street, S.W.
Washington, D.C. 20410

-and

**JGM PROPERTY GROUP, LLC**
7747 25 Mile Road, Suite 104
Shelby Township, Michigan 48316

Defendants.

Case No. ____________

Judge: ____________

**VERIFIED COMPLAINT FOR QUIET TITLE,**
**WRONGFUL EVICTION, AND TRESPASS**

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to Ohio Revised Code Section 5303.01, which authorizes actions to quiet title to real property.


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

2. Venue is proper in Cuyahoga County because the real property at issue is situated in the City of Beachwood, Cuyahoga County, Ohio.

3. The amount in controversy exceeds the jurisdictional minimum of this Court.

## II. PARTIES

4. Plaintiff Jonathan J. Marell is an individual residing in Cuyahoga County, Ohio, and is a lawful owner of the real property located at 25816 Fairmount Boulevard, Beachwood, Ohio 44122 (Permanent Parcel Number 741-32-322) (the "Property").

5. Plaintiff Ebby F. Marell is an individual residing in Cuyahoga County, Ohio, and is a lawful owner of the Property.

6. Defendant United States Department of Housing and Urban Development ("HUD") is a department of the United States Government with its principal office at 451 7th Street, S.W., Washington, D.C. 20410. HUD formerly held mortgage interests in the Property which have been satisfied and extinguished.

7. Defendant Compu-Link Corporation, d/b/a CLNK ("CLNK"), is HUD's national property preservation and management contractor that oversees property management companies for HUD-owned or HUD-managed properties, and upon information and belief, directed and authorized the actions of JGM Property Group, LLC with respect to the Property.

8. Defendant JGM Property Group, LLC ("JGM") is a Michigan limited liability company with its principal place of business at 7747 25 Mile Road, Suite 104, Shelby Township, Michigan 48316. JGM acted as HUD's property manager with respect to the Property under FHA Case #412-634984.


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

## III. FACTUAL BACKGROUND

### *A. The Property*

9. The Property is situated in the City of Beachwood, County of Cuyahoga and State of Ohio, known as being 25816 in Building No. 6 of The Fairmount Court Condominium, whose drawings are recorded in Volume 63 of Condominium Maps, Pages 69 to 73 of Cuyahoga County Records. The Property's Permanent Parcel Number is 741-32-322.

### *B. The HUD Mortgages*

10. The Property was previously owned by Mitzi Sands and Merril D. Sands, both now deceased.

11. On or about July 18, 2009, Mitzi Sands and Merril D. Sands executed a mortgage in favor of Wells Fargo, N.A. in the amount of $450,000.00, which was recorded on July 23, 2009 as Instrument Number 200907230590 in the Cuyahoga County Recorder's Office ("Mortgage 1"). A true and accurate copy of Mortgage 1 is attached hereto as **Exhibit A**[1] and incorporated herein by reference.

12. Mortgage 1 was subsequently assigned from Wells Fargo, N.A. to The Secretary of Housing and Urban Development by instrument dated September 17, 2012, recorded as Instrument Number 201210010512. A true and accurate copy of the Assignment is included in **Exhibit B**.

13. On or about July 18, 2009, Mitzi Sands and Merril D. Sands also executed a second mortgage directly in favor of The Secretary of Housing and Urban Development in the amount of $450,000.00, which was recorded on July 23, 2009 as Instrument Number 200907230591 in the Cuyahoga County Recorder's Office ("Mortgage 2"). A true and

1

[1] If the Court requires certified copies Plaintiff will supplement this filing.

accurate copy of Mortgage 2 is attached hereto as **Exhibit C** and incorporated herein by reference.

14. Mortgage 1 and Mortgage 2 are collectively referred to herein as the "HUD Mortgages."

15. On March 14, 2025, the Magistrate issued an Order acknowledging that HUD held two priority mortgages on the Property (Schedule B #10 and #11 of the Preliminary Judicial Report). A true and accurate copy of the Magistrate's Order is attached hereto as **Exhibit D** and incorporated herein by reference.

***C. The Foreclosure and Sheriff's Sale***

16. On or about 2024, the Fairmount Court Condominium Owners Association initiated a foreclosure action against the Property, styled Fairmount Court Condominium Owners Association v. Unknown Heirs of Merril D. Sands, et al., Case No. CV-24-104936, in the Court of Common Pleas, Cuyahoga County, Ohio, before Judge Maureen Clancy.

17. On April 8, 2025, the Court granted a default judgment in the foreclosure action. A true and accurate copy of the Default Judgment Order is attached hereto as **Exhibit E** and incorporated herein by reference.

18. A Sheriff's Sale of the Property was conducted on August 4, 2025. Jaffa Properties LLC was the successful purchaser at the Sheriff's Sale, purchasing the Property for $221,100.00.

19. From the sale proceeds, the United States Department of Housing and Urban Development was paid $205,759.77, which satisfied HUD's lien interests in the Property in full. A true and accurate copy of the Distribution of Sale Proceeds Report is attached hereto as **Exhibit F** and incorporated herein by reference.


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

20. The distribution from the Sheriff's Sale was as follows: Costs to Clerk: $3,910.00; Sheriff Fees: $3,369.50; Taxes: $8,060.73; United States Department of Housing and Urban Development: $205,759.77; Balance to Clerk: $0.00.

21. On September 5, 2025, the Court issued a Decree of Confirmation confirming the sale to Jaffa Properties LLC and ordering the Sheriff to deliver the deed. A true and accurate copy of the Decree of Confirmation is attached hereto as **Exhibit G** and incorporated herein by reference.

22. Plaintiffs have acquired lawful title to the Property and are the rightful owners thereof having executed General Warranty Deed Instrument No. 202512020537. A true and accurate copy of Plaintiffs' Deed is attached hereto as **Exhibit H** and incorporated herein by reference.

***D. Defendants' Wrongful Actions***

23. Despite HUD's mortgage interest having been fully satisfied by the payment of $205,759.77 from the Sheriff's Sale proceeds, and despite the Decree of Confirmation having been issued, Defendants have unlawfully asserted control over the Property.

24. JGM Property Group, acting as HUD's property manager under FHA Case #412-634984, posted emergency notice signs on the Property stating: "THIS PROPERTY IS BEING MANAGED BY JGM PROPERTY GROUP." A true and accurate photograph of said signage is attached hereto as **Exhibit I** and incorporated herein by reference.

25. JGM posted additional signage on the Property stating: "THE PROPERTY MAY NOT BE ENTERED UNTIL IT IS OFFERED FOR SALE. HUDHOMESTORE.GOV."


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

26. JGM posted a HUD visitor sign-in sheet at the Property. A true and accurate photograph of said sign-in sheet is attached hereto as **Exhibit J** and incorporated herein by reference.

27. On or about April 22, 2026, JGM changed the locks on the Property, thereby excluding Plaintiffs from their own home. In fact, JGM also damaged the garage while unlawfully entering the property. Photographs of the changed and replaced locks along with the damaged garage are attached hereto as **Exhibit K** and incorporated herein by reference.

28. On or about May 5, 2026, Plaintiffs discovered that they had been locked out of the Property by JGM's unauthorized lock change.

29. CLNK, as HUD's national property preservation contractor, directed, authorized, and/or ratified JGM's actions with respect to the Property.

30. At no time did any Defendant obtain a court order authorizing their entry upon, management of, or lockout of the Property.

31. On Tuesday, May 12, 2026, Plaintiffs posted a Three-Day Notice at the Property directed to all occupants, including JGM Property Group, LLC and the United States Department of Housing and Urban Development, demanding that they vacate the premises due to unauthorized possession of the Property. A true and accurate copy of the Three-Day Notice is attached hereto as **Exhibit L** and incorporated herein by reference.

32. After the three-day notice period expired, and it being apparent that no person was occupying the Property, Plaintiffs entered the Property on Sunday, May 17, 2026.

33. Upon entry, Plaintiffs rekeyed all of the locks on the Property, except for the front door lock, which was replaced.


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

34. Defendants have no legal right, title, interest, or claim in or to the Property, HUD's mortgage interests having been fully extinguished by the Sheriff's Sale proceeds.

**COUNT ONE**
**QUIET TITLE (O.R.C. § 5303.01)**
*(Against All Defendants)*

35. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 30 above as if fully set forth herein.

36. Plaintiffs are the lawful owners of the Property, having acquired title through the foreclosure, Sheriff's Sale, and Decree of Confirmation. *See Exhibits E, F, and G*.

37. Defendants claim an interest in the Property adverse to Plaintiffs by continuing to assert management authority over the Property, changing the locks, posting signs, and excluding Plaintiffs from the Property.

38. HUD's mortgage interests in the Property were fully satisfied by the payment of $205,759.77 from the proceeds of the Sheriff's Sale on August 4, 2025, and no further interest of HUD, CLNK, or JGM survives. *See Exhibits F and G*.

39. Pursuant to Ohio Revised Code Section 5303.01, Plaintiffs are entitled to a judicial determination that they hold clear title to the Property, free and clear of any right, title, interest, lien, or claim of Defendants or any of them.

40. Defendants should be forever barred and enjoined from asserting any right, title, interest, lien, or claim in or to the Property.

**COUNT TWO**
**WRONGFUL EVICTION / UNLAWFUL LOCKOUT (O.R.C. § 5321.15)**
*(Against Defendant JGM Property Group, LLC)*


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ
028542621

41. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 36 above as if fully set forth herein.

42. On or about April 22, 2026, JGM, without legal authority or court order, changed the locks on the Property, thereby physically excluding Plaintiffs from their home. Plaintiffs discovered the lockout on or about May 5, 2026. *See Exhibits I, J, and K*.

43. On Tuesday, May 12, 2026, Plaintiffs posted a Three-Day Notice at the Property demanding that JGM and all other occupants vacate. After the notice period expired and it being apparent that no person was occupying the Property, Plaintiffs entered the Property on Sunday, May 17, 2026, and rekeyed all locks, except for the front door lock, which was replaced.

44. JGM's conduct constitutes an illegal self-help eviction in violation of Ohio Revised Code Section 5321.15(A), which prohibits any person from initiating any act, including exclusion from the premises, for the purpose of recovering possession of residential premises other than through proper judicial process under Chapters 1923, 5303, and 5321 of the Revised Code.

45. JGM had no landlord-tenant relationship with Plaintiffs, no claim to the Property, and no lawful basis whatsoever to change the locks or exclude Plaintiffs from their Property.

46. As a direct and proximate result of JGM's unlawful lockout, Plaintiffs have suffered damages including, but not limited to, loss of use and enjoyment of their home, emotional distress, inconvenience, and costs incurred in seeking legal recourse.

47. JGM's conduct was willful, wanton, and in reckless disregard of Plaintiffs' rights, entitling Plaintiffs to an award of punitive damages.


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

**COUNT THREE**
**TRESPASS**
*(Against All Defendants)*

48. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 42 above as if fully set forth herein.

49. Plaintiffs are the lawful owners of the Property and have the exclusive right to possession thereof.

50. Defendants, without Plaintiffs' consent and without legal authority, entered upon and took possession of the Property, changed the locks, posted signs, and excluded Plaintiffs from their home. *See Exhibits I, J, K, and L.*

51. Defendants' unauthorized entry upon and possession of the Property constitutes trespass under Ohio law.

52. As a direct and proximate result of Defendants' trespass, Plaintiffs have suffered damages including loss of use and enjoyment of their property, loss of exclusive possession, and other damages to be proven at trial.

53. Defendants' conduct was intentional, willful, and without any claim of right, entitling Plaintiffs to an award of punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Jonathan J. Marell and Ebby F. Marell respectfully pray that this Court:

A. Enter a declaratory judgment quieting title to the Property in Plaintiffs and declaring that Defendants have no right, title, interest, lien, or claim in or to the Property;

B. Order that Defendants and all persons claiming under them be forever barred and enjoined from asserting any right, title, interest, lien, or claim in or to the Property;


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

C. Issue a permanent injunction ordering Defendants, their agents, servants, employees, and all persons acting in concert with them to immediately cease and desist from entering the Property, changing locks, posting signs, or otherwise interfering with Plaintiffs' use and possession of the Property;

D. Award Plaintiffs compensatory damages in an amount to be determined at trial; an amount greater than 15,000.00.

E. Award Plaintiffs punitive damages in an amount sufficient to punish Defendants and deter similar conduct; an amount greater than 15,000.00.

F. Award Plaintiffs their reasonable attorneys' fees and costs of this action;

G. Grant such other and further relief as this Court deems just and equitable.

Respectfully submitted,

/s/ James Grendell
James Grendell (0088098)
Plunkett Cooney
716 Mt. Airyshire, Suite 150
Columbus, OH 43235
Tel: (614) 629-3000
Fax: (248) 901-4040
jgrendell@plunkettcooney.com
*Counsel for Plaintiffs Johnathan and Ebby Marell*

## VERIFICATION

STATE OF OHIO )

) ss:

COUNTY OF CUYAHOGA )

I, Jonathan J. Marell, being first duly sworn, depose and state that I am one of the Plaintiffs in the above-captioned action; that I have read the foregoing Verified Complaint and know the contents thereof; and that the statements made therein are true according to my own knowledge, except as to those matters therein stated upon information and belief, and as to those matters, I believe them to be true.

Jonathan J. Marell

Sworn to before me and subscribed in my presence this 11 day of July, 20__.

Notary Public

My commission expires: Never

James Edward Grendell
Attorney At Law
Notary Public, State of Ohio
My commission has no expiration date
Sec. 147.03 R.C.

I, Ebby F. Marell, being first duly sworn, depose and state that I am one of the Plaintiffs in the above-captioned action; that I have read the foregoing Verified Complaint and know the contents thereof; and that the statements made therein are true according to my own knowledge, except as to those matters therein stated upon information and belief, and as to those matters, I believe them to be true.

Ebby F. Marell

Sworn to before me and subscribed in my presence this 11 day of July, 20__.


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

Notary Public

My commission expires: Never



James Edward Grendell
Attorney At Law
Notary Public, State of Ohio
My commission has no expiration date
Sec. 147.03 R.C.



Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

EXHIBIT
A

CUYAHOGA COUNTY RECORDER
LILLIAN J GREENE - 13
MORT 7/23/2009 3:48:54 PM
200907230590

[Space Above This Line For Recording Data]

**State of Ohio** FHA Case No. 412-6349844 957

# CLOSED END FIXED RATE HOME EQUITY CONVERSION MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on 07/18/09. The mortgagor is MITZI SANDS AND MERRIL D SANDS, WIFE AND HUSBAND

, whose address is 25816 FAIRMOUNT BLVD, BEACHWOOD, OH 44122 ("Borrower"). This Security Instrument is given to WELLS FARGO BANK, N.A.

, which is organized and existing under the laws of THE UNITED STATES, and whose address is
P.O. BOX 11701
NEWARK, NJ 071014701 ("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest and all renewals, extensions and modifications of the Note, up to a maximum principal amount of FOUR HUNDRED FIFTY THOUSAND AND 00/100

(U.S. $ 450000.00); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on JULY 28TH, 2073. For this purpose, Borrower does hereby mortgage, grant and convey to

0108520479



Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

Lender the following described property located in* and being the same Property conveyed to Borrower by that certain recorded in Volume ** , Page , of the Office in CUYAHOGA /Deed County, Ohio: /Recorders
*Beachwood, OH

SEE ATTACHED **Document No. 200907230589

which has the address of 25816 FAIRMOUNT BLVD
[Street]

BEACHWOOD , OH 44122 ("Property Address");
[City] [State] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to

**EXHIBIT "A"**

**Situated in the City of Beachwood, County of Cuyahoga and State of Ohio: and known as being 25816, in Building No. 6 of The Fairmount Court Condominium, whose drawings are recorded in Volume 63 of Condominium Maps, Pages 69 to 73 of Cuyahoga County Records and as further described by the Declaration of Condominium Ownership and By-Laws attached thereto recorded in Volume 86-7822, Page 61 of Cuyahoga County Records; together with an undivided percentage interest in and to all the common areas and facilities, appurtenant to said unit as set forth in the Declaration of Condominium ownership, as the same may be amended from time to time, which percentage shall automatically change in accordance with the amended Declaration as the same are filed of record pursuant to the provisions of said declarations and will attach to the additional common areas and facilities in the percentages set forth in such amended declarations, which percentages shall automatically be deemed to be conveyed effective on the recording of each such amended declaration as though conveyed hereby.**

restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness

under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Groundsfor Accelerationof Debt.**

**(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

**(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

**(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

**(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

**(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within SIXTY DAYS from the date hereof, if permitted by Applicable Law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to SIXTY DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any

difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a)** Second Security Instrument. In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b)** Relationship of First and Second Security Instruments. Payments made by the Secretary shall not be included in the debt under the Note unless:

(i) This Security Instrument is assigned to the Secretary; or
(ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c)** Effect on Borrower. Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearanceby LenderNot a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. GoverningLaw; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignmentof Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19. Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.



Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

**20. ForeclosureProcedure.** If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, costs of title evidence.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priorty of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**23. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument, shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, CUYAHOGA County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Paragraph 23 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

**24. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower, as well as Loan Advances for interest, MIP, Servicing Fees, and other charges, shall be obligatory.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider  [ ] Planned Unit Development Rider

[X] Other (Specify) CONDOMINIUM RIDER

(Acknowledgments on following page)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

MITZI SANDS (Seal) -Borrower

MERRIL D SANDS (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower



Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

**[Space Below This Line For Acknowledgement]**

**State of Ohio,**

**County of:** CUYAHOGA (Cuyahoga)

The foregoing instrument was acknowledged before me this July 18, 2009 by Mitzi Sands and Merril D. Sands

(Signature of person taking acknowledgement)

DAVID W. FURRY
NOTARY PUBLIC, STATE OF OHIO
Recorded in Cuyahoga County
My Comm Expires Aug. 19, 2013

(Title or rank)

(Serial number, if any)

This Instrument was prepared by:

**WELLS FARGO BANK, N.A.**
**9021 MERIDAN WAY MAC M6964-012**
**WEST CHESTER OH ,450690000**

# CONDOMINIUM RIDER
# (Home Equity Conversion Mortgage)

412-6349844 957

THIS CONDOMINIUM RIDER is made this 18TH day of JULY , 2009 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to WELLS FARGO BANK, N.A.

("Lender") of the same date and covering the Property described in the Security Instrument and located at: 25816 FAIRMOUNT BLVD, BEACHWOOD, OH 44122

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
FAIRMOUNT COURT CONDOMINIUM

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.
B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.


Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

____________________________ (Seal)
MITZI SANDS -Borrower

____________________________ (Seal)
MERRIL D SANDS -Borrower

____________________________ (Seal)
-Borrower

____________________________ (Seal)
-Borrower

_______________________________________________ (Seal)
-Borrower

_______________________________________________ (Seal)
-Borrower

_______________________________________________ (Seal)
-Borrower

_______________________________________________ (Seal)
-Borrower

NORTHERN TITLE AGENCY, INC.
19545 CENTER RIDGE RD.
ROCKY RIVER, OHIO 44116

NORTHERN TITLE
FILE # 09-0619

CUYAHOGA COUNTY
OFFICE OF FISCAL OFFICER - 2
RELA 10/1/2012 2:37:02 PM
201210010512

EXHIBIT
B

**Prepared by and after Recording, please return to:**

**Stewart Lender Services**
**Attn: Maude Le Blanc**
**9700 Bissonnet, Suite 1500**
**Houston, TX 77036**
**Phone: 832-308-6858**

Job Number: **465_2901**
Loan Number: **0108520479**
FHA Loan No: **412-6349844**

## ASSIGNMENT of MORTGAGE AND OTHER LOAN DOCUMENTS

WELLS FARGO BANK, N.A., whose address is ONE HOME CAMPUS, DES MOINES, IA 50328 ("Assignor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration received by Assignor, hereby assigns, transfers, sets over and conveys to THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT, whose address is 451 7th STREET, S.W., WASHINGTON, D.C. 20410 ("Assignee"), and his/her successors and assigns, without recourse, the following:

1. that certain Mortgage dated 7/18/2009, and recorded on 7/23/2009, Instrument/Document No. 200907230590, , among the land records of Cuyahoga County, Ohio, as amended or modified (the Mortgage), which Mortgage secures that certain promissory note dated 7/18/2009 (the "Note"); and

**Borrower:** MITZI SANDS AND MERRIL D SANDS
**Recording Ref:** Recorded on 7/23/2009, Instrument/Document No. 200907230590, Date of Mortgage 7/18/2009
**Original Beneficiary:** WELLS FARGO BANK, N. A.
**Property Address:** 25816 FAIRMOUNT BLVD
BEACHWOOD OH 44122

2. such other documents, agreements, instruments and other collateral that evidence, secure or otherwise relate to Assignor's right, title or interest in and to the Mortgage and/or the Note, including without limitation the title insurance policies and hazard insurance policies that might presently be in effect.

**SEE EXHIBIT 'A'**

TO HAVE AND TO HOLD unto Assignee and its successors and assigns forever.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered by its duly authorized officer as of the 17 day of September, 2012

WELLS FARGO BANK, N.A.

By: Kathy McCauley
**KATHY McCAULEY**
**Vice President Loan Documentation**

STATE OF IOWA
COUNTY OF DALLAS

**ACKNOWLEDGMENT**

The foregoing instrument was acknowledged before me on the 17 day of September, 2012 by Kathy McCauley, as VICE PRESIDENT of Loan Documentation for WELLS FARGO BANK, N.A., in the capacity noted in the foregoing instrument.

Laura Allen
Notary Public
My commision expires 1/4/14

LAURA ALLEN
Commission Number 766116
My Commission Expires
January 4, 2014

**EXHIBIT "A"**

**Situated in the City of Beachwood, County of Cuyahoga and State of Ohio: and known as being 25816, in Building No. 6 of The Fairmount Court Condominium, whose drawings are recorded in Volume 63 of Condominium Maps, Pages 69 to 73 of Cuyahoga County Records and as further described by the Declaration of Condominium Ownership and By-Laws attached thereto recorded in Volume 86-7822, Page 61 of Cuyahoga County Records; together with an undivided percentage interest in and to all the common areas and facilities, appurtenant to said unit as set forth in the Declaration of Condominium ownership, as the same may be amended from time to time, which percentage shall automatically change in accordance with the amended Declaration as the same are filed of record pursuant to the provisions of said declarations and will attach to the additional common areas and facilities in the percentages set forth in such amended declarations, which percentages shall automatically be deemed to be conveyed effective on the recording of each such amended declaration as though conveyed hereby.**

3

**EXHIBIT**
**C**

CUYAHOGA COUNTY RECORDER
LILLIAN J GREENE - 13
MORT 7/23/2009 3:48:54 PM
200907230591

When Recorded Mail to:
WFHM FINAL DOCS X2599-024
405 SW 5TH STREET
DES MOINES, IA 50309-4600

[Space Above This Line For Recording Data]

**State of Ohio** FHA Case No. 412-6349844 957

# CLOSED-END FIXED RATE HOME EQUITY CONVERSION SECOND MORTGAGE

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on 07/18/09 . The mortgagor is
MITZI SANDS AND MERRIL D SANDS, WIFE AND HUSBAND

whose address is
25816 FAIRMOUNT BLVD, BEACHWOOD, OH 44122

("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W., Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
FOUR HUNDRED FIFTY THOUSAND AND 00/100

(U.S. $**********450,000.00 ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. The full debt, including amounts described in (a), (b), and (c) above, if not due earlier, is due and payable on JULY 28TH , 2073 . For this purpose, Borrower does hereby mortgage, grant and convey to

Lender the following described property located in * and being the same Property conveyed to Borrower by that certain Deed recorded in Volume ** , Page , of this Office in County, CUYAHOGA Ohio:

SEE ATTACHED /Recorders *Beachwood, OH
** Document No. 200907230589

which has the address of 25816 FAIRMOUNT BLVD ,
[Street]

BEACHWOOD , OH 44122 ("Property Address");
[City] [State] [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

**EXHIBIT "A"**

**Situated in the City of Beachwood, County of Cuyahoga and State of Ohio: and known as being 25816, in Building No. 6 of The Fairmount Court Condominium, whose drawings are recorded in Volume 63 of Condominium Maps, Pages 69 to 73 of Cuyahoga County Records and as further described by the Declaration of Condominium Ownership and By-Laws attached thereto recorded in Volume 86-7822, Page 61 of Cuyahoga County Records; together with an undivided percentage interest in and to all the common areas and facilities, appurtenant to said unit as set forth in the Declaration of Condominium ownership, as the same may be amended from time to time, which percentage shall automatically change in accordance with the amended Declaration as the same are filed of record pursuant to the provisions of said declarations and will attach to the additional common areas and facilities in the percentages set forth in such amended declarations, which percentages shall automatically be deemed to be conveyed effective on the recording of each such amended declaration as though conveyed hereby.**

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and

this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

**9. Groundsfor Accelerationof Debt.**

**(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(v) An obligation of the Borrower under this Security Instrument is not performed.

**(b) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

**(c) Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

**(d) Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No DeficiencyJudgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a) Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b) Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c) Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationshipto First Security Instrument.**

**(a) Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

**(b) Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

**(c) Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

**(d) No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even


© 2008 First American Real Estate Solutions LLC

though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

(e) **Restrictionson Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

**14. Forbearanceby Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successorsand Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless Applicable Law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. GoverningLaw; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignmentof Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. ForeclosureProcedure.** If Lender requires immediate payment in full under Paragraph 9, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, costs of title evidence.

**21. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.



Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**23. Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument, shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, CUYAHOGA County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Paragraph 23 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

**24. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower, as well as Loan Advances for interest, MIP, Servicing Fees, and other charges, shall be obligatory.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[ ] Condominium Rider [ ] Planned Unit Development Rider

[X] Other (Specify) CONDOMINIUM RIDER

(Acknowledgments on following page)



Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

MITZI SANDS (Seal) -Borrower

MERRIL D SANDS (Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

(Seal) -Borrower

**[Space Below This Line For Acknowledgement]**

**State of Ohio,**

**County of** Cuyahoga

The foregoing instrument was acknowledged before me this July 18, 2009 by Mitzi Sands and Merril D. Sands

(Signature of person taking acknowledgement)

DAVID W. FURRY
NOTARY PUBLIC. STATE OF OHIO
Recorded in Cuyahoga County
My Comm. Expires Aug. 19, 2013

(Title or rank)

(Serial number, if any)

This Instrument was prepared by:
**WELLS FARGO BANK, N.A.**
**9021 MERIDAN WAY , MAC M6964-012**
**WEST CHESTER , OH 450690000**

# CONDOMINIUM RIDER
# (Home Equity Conversion Mortgage)

412-6349844 957

THIS CONDOMINIUM RIDER is made this 18TH day of JULY , 2009 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
SECRETARY OF HOUSING AND URBAN DEVELOPMENT

("Lender") of the same date and covering the Property described in the Security Instrument and located at: 25816 FAIRMOUNT BLVD, BEACHWOOD, OH
44122

[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
FAIRMOUNT COURT CONDOMINIUM

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

CONDOMINIUM COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

Mitzi Sands _______________________________ (Seal)
MITZI SANDS -Borrower

Merril D Sands _______________________________ (Seal)
MERRIL D SANDS -Borrower

_______________________________ (Seal)
-Borrower

_______________________________ (Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

(Seal)
-Borrower

NORTHERN TITLE AGENCY, INC.
19545 CENTER RIDGE RD.
ROCKY RIVER, OHIO 44116

NORTHERN TITLE
FILE # 09-0619

EXHIBIT

D

193380092

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

FAIRMOUNT COURT CONDOMINIUM OWNERS ASSOCIATION
Plaintiff

UNKNOWN HEIRS OF MERRIL D. SANDS, ET AL
Defendant

Case No: CV-24-104936

Judge: MAUREEN CLANCY
Magistrate: GINA LUNSFORD

## MAGISTRATE'S ORDER

IT APPEARS FROM THE PJR FILED THAT UNITED STATES OF AMERICA ¿ HUD HAS TWO PRIORITY MORTGAGES IN FRONT OF PLAINTIFF'S JUDGMENT LIENS. (SEE PJR, SCHEDULE B #10 AND #11). DEFENDANT UNITED STATES OF AMERICA ¿ HUD FILED AN ANSWER CLAIMING AN INTEREST IN THE PROPERTY ON, BUT DID NOT STATE THE CURRENT BALANCE ON EITHER MORTGAGE. UNITED STATES OF AMERICA ¿ HUD MUST FILE A NOTICE WITH THE COURT INDICATING THE AMOUNT OWED, THE INTEREST RATE, AND THE DATE THE AMOUNT IS DUE ON OR BEFORE 4/4/25.

Gina M Lunsford

Magistrate Signature 03/14/2025
CPGXL

03/14/2025

RECEIVED FOR FILING
03/14/2025 08:50:12
NAILAH K. BYRD, CLERK

EXHIBIT

E

194465123

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

FAIRMOUNT COURT CONDOMINIUM OWNERS ASSOCIATION
Plaintiff

UNKNOWN HEIRS OF MERRIL D. SANDS, ET AL
Defendant

Case No: CV-24-104936

Judge: MAUREEN CLANCY
Magistrate: GINA LUNSFORD

## MAGISTRATE'S ORDER

DEFAULT HEARING HELD BY MAGISTRATE. PLAINTIFF'S COUNSEL APPEARED. DEFENDANT(S) DID NOT APPEAR. PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT IS GRANTED. THE MAGISTRATE WILL ISSUE A MAGISTRATE'S DECISION MAKING SPECIFIC FINDINGS AS TO THE RIGHTS AND LIABILITIES OF THE PARTIES.

Gina M Lunsford

Magistrate Signature 04/08/2025
CPGXL

04/08/2025

RECEIVED FOR FILING
04/08/2025 14:41:04
NAILAH K. BYRD, CLERK

Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 391[illegible]

**EXHIBIT**

**F**

**Cuyahoga County Sheriff**

# CV-24-104936 OOS

# DISTRIBUTION of SALE PROCEEDS REPORT

**The State of Ohio**
**Cuyahoga County** } ss.

**FAIRMOUNT COURT CONDOMINIUM OWNERS ASSOCIATION**, Plaintiff
vs
**UNKNOWN HEIRS, SPOUSE, EXECUTORS, ADMINISTRATORS, DEVISEES, LEGATEES, ASSIGNS AND CREDITORS OF MERRIL D. SANDS, AKA MERRIL SANDS, DECEASED, ET AL**, Defendant

Sale Date: **Monday the 4th day of August A.D. 2025**

Purchaser: **JAFFA PROPERTIES LLC**

Purchase Price: **$221,100.00**

| PAID | |
|---|---|
| Paid Costs to Clerk | $3,910.00 |
| Retained Sheriff Fees | $3,369.50 |
| Paid Taxes | $8,060.73 |
| PAID UNITED STATES DEPT HOUSING&URBAN DEVELOPMENT | 205,759.77 |
| Balance to Clerk | $0.00 |
| Sheriff to Hold | 0.00 |
| **Total Amount Made on this Writ** | $221,100.00 |

Harold A. Pretel, Cuyahoga County Sheriff

EXHIBIT
G

201056237

# IN THE COURT OF COMMON PLEAS
# CUYAHOGA COUNTY, OHIO

FAIRMOUNT COURT CONDOMINIUM OWNERS ASSOCIATION
Plaintiff

UNKNOWN HEIRS OF MERRIL D. SANDS, ET AL
Defendant

Case No: CV-24-104936

Judge: MAUREEN CLANCY

## JOURNAL ENTRY

DECREE OF CONFIRMATION (Parcel(s) #74132322)

THE SHERIFF HAVING SOLD THE PROPERTY DESCRIBED IN THE ORDER OF SALE ISSUED TO HIM, THE COURT BEING SATISFIED OF THE LEGALITY OF THE SALE AND THAT THE NOTICE OF THE SALE WAS IN ALL RESPECTS IN CONFORMITY TO LAW, APPROVES AND CONFIRMS THE SAME AND DIRECTS THE SHERIFF TO EXECUTE AND DELIVER TO JAFFA PROPERTIES LLC A GOOD AND SUFFICIENT DEED THEREOF. UPON FULL PAYMENT OF THE PURCHASE PRICE, THE PURCHASER WILL BE ENTITLED TO A WRIT OF POSSESSION AGAINST ALL PARTY DEFENDANTS. ALL UNDISPUTED STATE LIENS ARE PROTECTED AS PROVIDED IN R.C. SEC. 2329.192.

PURSUANT TO CIV.R. 58(B), THE CLERK OF COURTS MUST SERVE, IN A MANNER PRESCRIBED BY CIV.R. 5(B), ALL PARTIES NOT IN DEFAULT FOR FAILURE TO APPEAR NOTICE OF THIS JUDGMENT AND ITS DATE OF ENTRY UPON THE JOURNAL AND MUST NOTE THE SERVICE ON THE APPEARANCE DOCKET.

Judge Signature 09/05/2025
CPGXL

09/05/2025

RECEIVED FOR FILING
09/05/2025 12:00:11
NAILAH K. BYRD, CLERK

Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917631 / CLJSZ

PPN: 741-32-322 202512020537 DESV
Johnathan J Marell 12/02/2025 02:14 PM
AMT $455,000.00 RCPT# 20251202000359
CONV $1820.00 PAID BY OHIO REAL
25-84646

[signature]
CUYAHOGA COUNTY FISCAL OFFICE

**EXHIBIT**
**H**

OHIO REAL TITLE
218118

## GENERAL WARRANTY DEED

**JAFFA PROPERTIES LLC, AN OHIO LIMITED LIABILITY COMPANY,** for valuable consideration paid, grants, with general warranty covenants, to **JONATHAN J. MARELL** and **EBBY F. MARELL**, for their joint lives, remainder to the survivor of them, the following real property:

Situated in the City of Beachwood, County of Cuyahoga and state of Ohio:

And known as being 25816, in Building No. 6 of The Fairmount Court Condominium, whose drawings are recorded in Volume 63 of Condominium Maps, Pages 69 to 73 of Cuyahoga County Records and as further described by the Declaration of Condominium Ownership and By-Laws attached thereto recorded in Volume 86-7822, Page 61 of Cuyahoga County Records; together with an undivided percentage interest in and to all the common areas and facilities, appurtenant to said unit as set forth in the Declaration of Condominium ownership, as the same may be amended from time to time, which percentage shall automatically change in accordance with the amended Declaration as the same are filed of record cord pursuant to the provisions of said declaration and will attach to the additional common areas and facilities in the percentages set forth in such amended declaration, which percentages shall automatically be deemed to be conveyed effective on the recording of each such amended declaration as though conveyed hereby.

Tax Mailing Address: 25816 FAIRMOUNT BLVD
BEACHWOOD OH 44122

Except a) any mortgage assumed by Grantee; b) such restrictions, conditions, easements (however created) and encroachments as do not materially adversely affect the use or value of the property, c) zoning ordinances, if any, and d) taxes and assessments, both general and special, not yet due and payable. Subject to the Ohio Revised Code, the Declaration, Drawings, By-Laws, and Rules and Regulations of the Condominium or

OHIO REAL TITLE
218118



Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

Cluster Association (the "Documents"), which collectively define and control the ownership, use, and occupancy of the Common Areas, Facilities, and Property.

Permanent Parcel Number: 741-32-322

Prior Instrument Number: 202510210201

Property Address: 25816 Fairmount Boulevard, Beachwood, OH 44122

Executed by **YAZAN ABUJARADEH, AUTHORIZED REPRESENTATIVE** of **JAFFA PROPERTIES LLC**, this the 26 day of NOVEMBER, 2025.

**JAFFA PROPERTIES LLC**

Member

By: **YAZAN ABUJARADEH**
Its: **AUTHORIZED REPRESENTATIVE**

State of OHIO

County of CUYAHOGA

This is an acknowledgment clause. No oath or affirmation was administered to the signer.

The foregoing instrument was acknowledged before me this 26 day of NOVEMBER, 2025 by **YAZAN ABUJARADEH, AUTHORIZED REPRESENTATIVE** of **JAFFA PROPERTIES LLC, AN OHIO LIMITED LIABILITY COMPANY,** on behalf of the company.

NOTARY PUBLIC

This document was prepared by:
Leonard A. Cuilli
Sandhu Law Group, LLC
1213 Prospect Ave., STE 300
Cleveland, OH 44115
(216) 373-1001
25-09309-218118

NOTARY PUBLIC STATE OF OHIO
REX ROBERTS
Notary Public
State of Ohio
My Comm. Expires
May 31, 2026



Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

EXHIBIT

I

# NOTICE IN CASE OF EMERGENCY:

THIS PROPERTY IS BEING MANAGED BY JGM PROPERTY GROUP.

FOR ANY EMERGENCIES OR INCIDENTS RELATING TO THE CONDITION OF THIS PROPERTY THAT REQUIRE IMMEDIATE ATTENTION, PLEASE CONTACT JGM PROPERTY GROUP AT THE BELOW NUMBER:

JGM PROPERTY GROUP

JGM Property Group
7747 25 Mile Rd Suite 104
Shelby Twp, MI 48316
Toll Free: 888-853-8202

FHA CASE #: 412-634984

PROPERTY ADDRESS: 25816 Fairmount Bld Beachwood

IF YOU HAVE ANY QUESTIONS ABOUT THE SALE OF THIS HOME, PLEASE MAKE ARRANGEMENTS WITH A REAL ESTATE BROKER OF YOUR CHOICE. THE PROPERTY MAY NOT BE ENTERED UNTIL IT IS OFFERED FOR SALE.

[illegible]HOMESTORE.GOV

Electronically Filed 07/17/2026 14:59 / / CV 26 142897 / Confirmation Nbr. 3917531 / CLJSZ

Date: 7 / 2 / 2026

Dear Borrower:

**URGENT NOTICE:**

*Please contact your mortgage servicer immediately at:*

1-( 877 ) 622 - 8525

**Thank you**

**EXHIBIT**
**J**

## DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT SIGN I

ATTENTION: ALL VISITORS ARE REQUIRED TO SIGN IN

PROPERTY ADDRESS

25816 Fairmount Blvd
Beachwood OH

FHA CASE #

412-634984

JG

Manage
JGM Pro

Toll free
888-853

| DATE | NAME | REPRESENTATIVE OF | PURPOSE | |
|---|---|---|---|---|
| 4/30/26 | Thad | JJm | Hipr | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

EXHIBIT

K








Kwikset

**EXHIBIT**

**L**

**THREE-DAY NOTICE TO LEAVE THE PREMISES**
**(Ohio Revised Code § 1923.04(A))**

**May 12, 2026**

To: All occupants and/or tenants of **25816 FAIRMOUNT BLVD BEACHWOOD, OH. 44122** including any tenant of record and any other person in possession Premises including **JGM Property Group, LLC and US Housing & Urban Development Department**, or any agent thereof.

This notice is issued pursuant to **Ohio Revised Code § 1923.02** for the following reason(s):

☐ Nonpayment of Rent

☐ Violation of Lease Agreement

☐ Illegal or Criminal Activity on the Premises

☒ Other: unauthorized possession of property

You are notified that:

1. You are in possession of the above premises lease and as an at-will tenant, and you ha never paid of rent. Your right of occupancy is terminated. Demand is hereby made that y leave the premises and deliver possession within three or more days after service of t notice.

2. If you fail to vacate the premises within three (3) days of service of this notice, l proceedings will be initiated against you to recover possession of the property, along any damages, unpaid rent, court costs, and attorney's fees as permitted by law.

**YOU ARE BEING ASKED TO LEAVE THE PREMISES. IF YOU DO NOT LEAVE EVICTION ACTION MAY BE INITIATED AGAINST YOU. IF YOU ARE IN DO REGARDING YOUR LEGAL RIGHTS AND OBLIGATIONS AS A TENANT, I RECOMMENDED THAT YOU SEEK LEGAL ASSISTANCE.**

- James Grendell attorney for title owners, **JONATHAN J & EBBY F MARELL**

Signature: ____________

Legal contact **for inquiries about this notice: James E. Grendell, Senior Attorney, Plunkett** 716 Mt. Airyshire, Suite 150, Columbus, **Ohio 43235 Direct: (614) 629-3014 | Offic** 629-3000 | jgrendell@plunkettcooney.com